Strafford, }
June, 1897. }

## STATE *v.* WIMPFHEIMER *& a.*

Under a statute providing that officers specially named, and " all other officers necessary for the good government of the city, who are not chosen in the ward meetings or otherwise appointed by law," shall be elected by the city councils, it is their duty to choose water commissioners provided for by law.

A city may establish by ordinance the term of office, within reasonable limits, for those of its officers and agents whose terms are not fixed by law.

A city ordinance is effectual without reference to the date of its publication, as directed by P. S., c. 50, s. 11.

An ordinance repealed by a general provision in a revision and at the same time re-enacted is, in substance and legal effect, in force continuously from its first enactment.

INFORMATION, in the nature of a *quo warranto*, filed by the attorney-general against the defendants, who are in possession of the office of water commissioners of the city of Somersworth.

*Harry V. Moore, John S. H. Frink, James A. Edgerly,* and *John Kivel,* for the state.

*Streeter, Walker & Hollis, John E. Young,* and *William S. Pierce,* for the defendants.

CHASE, J. By chapter 143, Laws 1891, the town of Somersworth was authorized " to construct, manage, maintain, and own suitable water-works," for the purpose of supplying the inhabitants of the village of Great Falls with water. It was required to place the works under the control of a board of water commissioners consisting of three suitable persons, not more than two of whom should belong to the same political party. The selectmen of the town were authorized to appoint the board, and it was to have such powers and duties as were prescribed by the town from time to time.

The town was made a city in 1893, and all the powers conferred upon the town by the act of 1891 were transferred to the city. Laws 1893, c. 171, ss. 1, 25; P. S., c. 46, s. 1. The city councils were required to elect a city clerk, board of assessors, city treasurer, chief engineer of the fire department and assistants, street commissioner, city solicitor, city physician, and " all other officers necessary for the good government of the city, who are not chosen in ward meetings, appointed by the mayor and aldermen, or otherwise appointed by law." Laws 1893, c. 171, ss. 17, 18. In 1895, a substitute for section 18 was enacted, providing that " the city councils shall . . . elect a city treasurer, a chief engineer and assistant engineers of the fire department, a street commissioner, a city solicitor, city physician, tax collector, city marshal, assistant marshal, such police officers and other officers as may be provided for by ordinance, and elect all other officers necessary for the good government of the city, who are not chosen in the ward meetings or otherwise appointed by law." Laws 1895, c. 179, s. 4. Here, in addition to the officers mentioned in the original section, the tax collector, city marshal, assistant marshal, police officers and other

officers provided for by city ordinances are specially named. As the law previously stood, these officers were appointed by the mayor and aldermen. P. S., *c.* 48, *s.* 15. The water commissioners were also appointed by the same body, by virtue of the law making all provisions of the statute relating to the selectmen of towns applicable to the mayor and aldermen of cities "unless it is otherwise provided by law." P. S., *c.* 48, *s.* 14. The words "appointed by the mayor and aldermen" were omitted from the exception, leaving as the only officers excluded from the operation of the section those "chosen in ward meetings," such as the supervisors of the check-list (Laws 1893, *c.* 171, *s.* 4), the moderators, ward clerks, aldermen, common councilmen, and selectmen (*Ib.*, *ss.* 10, 12); and those "otherwise appointed by law," such as the clerk of the police court (Laws 1895, *c.* 179, *s.* 6), the president and clerk of the common council (P. S., *c.* 48, *ss.* 8, 9), the president and clerk of the board of supervisors (Laws 1893, *c.* 171, *s.* 4), and the clerk of the board of assessors (*Weeks v. Dennett*, 62 N. H. 2). In other words, the substituted section made it the duty of the city councils to elect all officers who had previously been appointed by the mayor and aldermen. If such was not the intention, the words dropped from the former section should have been retained in order to fully and clearly express the meaning. They qualified the general terms that followed the particular enumeration of officers, and were as necessary in the new section as they were in the old one if it was intended to continue the qualification. Their omission tends to prove an intent to include in the general terms all officers previously appointed by the mayor and aldermen not specially named.

It has been suggested that the general terms refer to officers of the same class or general character as those previously enumerated, and therefore that they do not include water commissioners. The conclusion does not follow from the premises. Among the officers particularly named are the city solicitor and city physician, who are not public officers in the sense that the law assigns specific duties for them to perform. Their functions more closely resemble those of a servant. The city employs the solicitor to do its law business, and the physician to attend sick persons for whose welfare it is responsible. In a similar sense, the water commissioners are servants of the city in the business enterprise of supplying water to its inhabitants. They have the control of the water-works under the direction of the city. There is no such incongruity between the nature of their office and that of other officers specially named as to render it improbable that they were referred to by the general terms.

The only apparent reason why the duty of appointing water commissioners was originally imposed upon the selectmen (Som-

ersworth then being a town), was because it was thought that three persons would be likely to act with more deliberation and better discretion in the selection of the officers than the voters could exercise in the midst of the hurry and political excitement attendant upon a town meeting. This reason ceased when the town became a city. All the powers previously possessed by the town and its inhabitants were then delegated to and vested in the city councils, composed of the board of mayor and aldermen, and the board of common council. P. S., c. 48, ss. 6, 7; Ib., c. 50, s. 1. The city councils, when assembled in convention, consist of the mayor, and of one alderman and three councilmen from each of the five wards, or of twenty-one persons in all (Laws 1893, c. 171, ss. 2, 12),— not so large a number as to seriously impair the capacity of the body for deliberation and the reasonable exercise of discretion. It is also a representative body, in which the voters of each ward have substantially the same ratio of representation that they have in the board of mayor and aldermen, and a larger ratio than the voters of the town had in the board of selectmen.

A divided control of a business does not, as a general rule, promote its success. It is a business principle that accountability should be due directly to the authority which prescribes the responsibility. In a private corporation the directors are usually clothed with the power of appointing its subordinate officers and agents, as well as the power of deciding the policy to be pursued in the management of its business. An aqueduct corporation, having one class of officers to manage the business and prescribe the duties of its subordinates, and another to appoint the subordinates, would be an anomaly. It would not have the confidence of persons desiring the use of water, nor of persons desiring an investment for their money. The city of Somersworth in exercising the franchise of supplying its inhabitants with water closely resembles a private corporation; it is engaged in a business enterprise. See *Blood* v. *Electric Co.*, 68 N. H. 340. Its board of mayor and aldermen and its common council, by concurrent votes, manage the enterprise and prescribe the duties of the water commissioners. Laws 1891, c. 143, ss. 3, 4; P. S., c. 50, s. 1. They stand in relation to this particular business like the directors of a private corporation in relation to its business; and there is the same reason for giving them authority to appoint the officers and agents charged with the duty of executing the policy prescribed by them for the management of the business as there is for giving such authority to directors. It is presumed that the legislature intended the business should be conducted in a way that would secure reasonable service to the public. It apparently had in view the business principle referred to, for it provided that the city councils

may remove at pleasure any officer elected or appointed by them, unless his term of office is fixed by the act. Laws 1895, c. 179, s. 4. These considerations show that it intended to give the city councils authority to appoint the water commissioners, as well as the officers specially named in the act.

There is no occasion for a divided control of the water-works in order to secure the representation of more than one political party in the board of water commissioners, for the statute expressly requires such representation. There is nothing in the constitution of the city councils that renders it more difficult for them to comply with this requirement than for the board of mayor and aldermen, or renders it less certain that there will be a compliance.

It is claimed that the ordinance making the term of office of the water commissioners three years is invalid, because (1) the city had no power to pass such an ordinance; (2) if it had power, the ordinance was not published as required by law; and (3) the ordinance had been repealed.

The want of power is based on the theory that the tenure of office of the water commissioners is fixed by s. 36, c. 43, P. S., which provides that "all town officers shall continue in office until the next annual meeting and until others shall be chosen or appointed and qualified in their stead, except in cases where the law otherwise directs." The act of 1891 provides that, for the more convenient management of the water-works, the town shall place them under the direction and control of a board of three water commissioners, to be appointed by the selectmen, and to have such powers and duties as the town shall, from time to time, prescribe. Laws 1891, c. 143, s. 3. Nothing is said about the duration of the term of office of the commissioners, but there is an implication that the town may, if it sees fit, fix the tenure within reasonable limits. This implication is strengthened by a consideration of the necessities of the case. Acquaintance with the construction of the works, the nature of the machinery in use, the capacity of the works for supplying water under varying conditions, the needs of water takers, and the general methods required for properly conducting such a business, is indispensable to a proper direction and control of the works. Frequent changes of the officers would tend to diminish their efficiency. It would require explicit terms to satisfy one that the legislature intended to disable the town from making a regulation which would extend the term beyond a year, especially when it is considered that the legislature itself has by express provisions in numerous instances made the term of such officers three years. Laws 1893, c. 138, s. 4; Ib., c. 220, s. 3; Ib., c. 231, s. 4; Ib., c. 299, s. 4; Laws 1895, c. 177, s. 4; Ib., c. 204, s. 4; Ib., c. 259, s. 4. Aside from the special authority granted

in the act of 1891, the city had, under the general law, authority to make reasonable by-laws for governing its prudential affairs. P. S., *c.* 40, *s.* 7; *Ib., c.* 50, *s.* 1. No good reason has been suggested, and none is perceived, why a city, under the general power thus conferred, may not establish by ordinance the term of office (within reasonable limits) for those of its officers and agents whose terms are not fixed by law.

The defendants were elected water commissioners June 16, 1896, under an ordinance passed that day, and published in a newspaper June 19, June 26, and July 3, 1896. The publication was according to the requirement of *s.* 32, *c.* 2, P. S., but it was not begun until after the election took place. The statute relating to the publication does not provide that an ordinance shall not go into effect until after the publication; it simply directs that there shall be one. P. S., *c.* 50, *s.* 11. The purpose of it is to notify the public of the ordinance. It is directory, and a failure to comply with it does not render an ordinance invalid. *Davis* v. *Smith*, 58 N. H. 16; *State* v. *Moore, ante, p.* 102; *Commonwealth* v. *Davis*, 140 Mass. 485.

The claim that the ordinance was repealed has no foundation in fact. Although upon the revision of the ordinances, December 15, 1896, this ordinance was, in form, repealed by the general provision repealing all ordinances previously passed, it was at the same time re-enacted and, so far as appears, without any change in its terms. In substance and legal effect it has been in force continuously since its first enactment, notwithstanding the formal acts attending the revision. *Lisbon* v. *Clark*, 18 N. H. 234, 239–244.

*Information dismissed.*

All concurred.